UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                                  CASE NO. 09-11743

PHOENIX ASSOCIATES LAND SYNDICATE, INC.          SECTION "B"

    DEBTOR                                                                      CHAPTER 7

## MEMORANDUM OPINION

This matter came before the court on July 7, 2010 on the motion of Wilbur J. "Bill" Babin, the Chapter 7 Trustee ("Trustee"), for an order of contempt and sanctions against E.H. Mitchell & Co., L.L.C. ("Mitchell") and its attorney Reginald Laurent ("Laurent") for willful violation of the automatic stay (P-194).

For the reasons set forth below, the motion is granted in part. Mitchell and Laurent are found to be in willful violation of the automatic stay. They are directed to cause the judgment *pro confesso* to be vacated and stricken from the mortgage records. As sanctions for the violation, Mitchell and Laurent shall pay the Trustee the actual costs and damages he has incurred as a result of Mitchell and Laurent's violation of the automatic stay. The portion of the Trustee's motion asking that the court order Mitchell and Laurent to withdraw their Rule to Show Cause against the Trustee is denied as moot.

**I.     Background Facts**

On March 18, 2009, the 22nd Judicial District Court for the State of Louisiana entered a judgment against the debtor and in favor of Mitchell. Mitchell recorded the judgment on April 3, 2009 and on April 6, 2009 filed a Petition for Writ of Attachment

1

and Garnishment Under Writ of Attachment against the debtor and PBLS, LLC ("PBLS"). Among other things, the Petition sought to pierce the corporate veil between the debtor and PBLS, alleging that PBLS is wholly owned by the debtor and is indistinguishable from the debtor. The suit named PBLS as a garnishee and sought to attach any property held by PBLS that belonged to the debtor.

On June 1, 2009 Mitchell filed a Supplemental and Amending Petition for Garnishment under Writ of Fieri Facias along with Interrogatories propounded to PBLS as garnishee of the debtor. PBLS was given 15 days to respond to the Interrogatories; it did not respond. On June 10, 2009 the debtor filed a Chapter 11 petition with this court, and Mitchell filed a Notice of Appearance and Request for Notice through its attorney on June 16, 2009. The case was converted from a Chapter 11 to a Chapter 7 on July 31, 2009 and Babin was appointed as the Chapter 7 Trustee. On August 26, 2009 without requesting relief from the automatic stay, Mitchell filed a motion for a judgment pro confesso and a motion for default judgment against PBLS. On January 27, 2010, the 22nd JDC entered a default judgment against PBLS as garnishee.

On March 25, 2010 the Trustee first learned of the default judgment and contacted Mitchell's attorney, Laurent, to demand that Mitchel release the default judgment and "take all necessary steps to vacate" the judgment. On June 11, 2010 Laurent filed in state court a Rule to Determine the Rank of Mortgages on Property to be sold Judicially and served it on PBLS's secured lender. On June 21, Laurent served the Trustee with a subpoena to appear and give testimony and produce records in the garnishment suit.

The Trustee filed the instant motion for contempt and also requested that this court order that he need not appear in the garnishment suit. The court did not have adequate time to prepare for the hearing on this motion because Laurent filed his opposition brief late, so the court declined to make a ruling in open court and instead took the matter under advisement and requested supplemental briefs.

## II. <u>Legal Analysis</u>

The gist of the Trustee's argument is that even though Mitchell is proceeding against PBLS, and not the debtor, it is still violating the stay because it is acting "to recover a claim against the debtor that arose before the commencement of this case."[1] Mitchell argues that the stay was not violated because all action against the debtor ceased when the bankruptcy petition was filed and instead Mitchell is proceeding only against assets of PBLS, who is not the debtor. Mitchell argues that property of PBLS is not property of the debtor, and that although PLBS may be a wholly owned subsidiary of the debtor, it does not follow that the assets of PBLS are assets of the debtor's estate. The court agrees with Mitchell that as a general rule, property of the estate includes the debtor's stock in a subsidiary but not the assets of the subsidiary.[2]

After this Mitchell's argument breaks down, however, because the rest of Mitchell's argument rests on the presumption that Mitchell was allowed to proceed with

---

[1] 11 U.S.C. § 362(a)(1).

[2] *In re Beck Industries, Inc.,* 479 F.2d 410 (2nd Cir. 1973); *In re Guyana Development Corp.,* 168 B.R. 892 (Bankr.S.D.Tex. 1994).

3

its garnishment suit once the bankruptcy petition was filed. The Trustee argues that all action in the garnishment suit should have ceased against both the debtor and PBLS once the Chapter 11 petition was filed and the order for relief was entered. Both sides cite cases in support of their respective positions, and the court agrees that there is a split in authority on this point, with no direct guidance from the Fifth Circuit. The court finds, however, that the following cases relied upon by Mitchell are not quite on point.

In *U.S. v. Allen Brothers of Homer, Inc.,* 36 B.R. 920 (M.D. La. 1984), the creditor served garnishment interrogatories on the debtor's employer. The employer answered the garnishment interrogatories but for unknown reasons did not withhold any of the debtor's wages; the court found no violation of the automatic stay when the creditor proceeded against the employer. The court held that the employer was not holding any property of the debtor, and that by failing to withhold the debtor's wages, the employer had became independently liable on the debt to the creditor:

> A garnishment proceeding is nothing more than a legal process for obtaining seizure of property of the judgment debtor in the hands of a third party. In this regard, the employer's role has been describes as 'the legal custodian of the employee's future wages, subject to further orders of the court.' The employer/garnishee has a statutory duty to continue the seizure, and the garnishee becomes personally liable for a breach of that duty.[3]

The *Allen* opinion does not give the specific date of the debtor's bankruptcy filing, so it is not possible to determine with certainty that it was filed after the garnishment

---

[3] *U.S. v. Allen Brothers of Homer, Inc.*, 36 B.R. 920, 923 (M.D. La. 1984)(internal citations omitted).

4

interrogatories were due, but the court did determine that there was independent liability of the employer to the creditor, so it seems likely that this was the case.

The court in *In re Gray*, 97 B.R. 930 (Bankr. N.D. Ill. 1989), found no violation of the automatic stay when the creditor proceeded with its suit against the debtor's employer after the employer failed to answer the garnishment interrogatories. The *Gray* court specifically found that the debtor's bankruptcy petition was filed after the period had expired for answering the garnishment interrogatories, so the employer/garnishee's independent liability to the creditor was established before the petition date even though the conditional judgment against the garnishee was not entered until after the petition date.

In *In re Sowers*, 164 B.R. 256 (Bankr. E.D. Va. 1994) the court again found no violation of the automatic stay where the employer/garnishee failed to answer the garnishment interrogatories and the creditor pursued its action against the garnishee after the debtor's bankruptcy petition had been filed. The *Sowers* court, much like the *Gray* court, specifically found that the answer to the garnishment interrogatories were due prior to the bankruptcy petition date. By failing to answer the interrogatories, the garnishee became independently liable to the creditor, and the automatic stay was not applicable to the creditor's continuing pursuit of the garnishee.

Finally, Mitchell cites *In re Waltjen*, 150 B.R. 419 (Bankr. N.D. Ill. 1993), where the debtor's employer also failed to answer the garnishment interrogatories and a conditional judgment was entered against the employer. In that case, however, the

5

employer had withheld wages of the debtor upon service of the garnishment interrogatories. The *Waltjen* court held that the wages held by the debtor's employer were property of the debtor's estate and that any further action taken by the creditor to make the judgment against the employer final would result in a stay violation although the creditor's actions up to that point had not been in violation of the stay because they took place before the debtor filed his bankruptcy petition. All of these four cases involve garnishment of a debtor's wages and obliquely support Mitchell's case. They are not a complete answer, however, to the issue in this case, as they are distinguishable.

The logic behind the rulings in these cases is that where the employer failed to answer the garnishment interrogatories and withhold wages of the debtor, there was no property of the estate involved. Once the employer failed to answer, the liability to the creditor became the employer's and the debtor's wages and/or estate property were no longer involved. Or as the *Gray* court states, where a judgment has been entered, it "creates a personal liability of the garnishee-employer. This is a new and independent cause of action against the employer, not an order to turn over assets of the judgment debtor."[4]

Mitchell argues that its actions against PBLS are analogous to the above cited cases, and at first blush, its argument has appeal. The problem, however, is that Mitchell is not proceeding against a third party who has become independently liable to Mitchell

---

[4] *In re Gray,* 97 B.R. 930, 935 (Bankr. N.D. Ill. 1989)(internal citations omitted).

by failing to respond to the garnishment interrogatories. Mitchell filed its garnishment interrogatories on June 1, 2010 and under state law PLBS had until June 16, 2010 to respond. The debtor filed its Chapter 11 petition on June 10, 2010, before the answer to the garnishment interrogatories was due. None of the cases cited by Mitchell support his argument that he had the right to pursue the garnishment proceeding against PBLS when it had not become independently liable to him before the bankruptcy petition was filed.

The Trustee cites several cases that hold that a creditor may not continue to pursue a garnishment proceeding where the garnishment proceeding was not complete when the bankruptcy petition was filed. These cases are more persuasive as they involve facts closer to those presented here.

*In re O'Connor*, 42 B.R. 390 (Bankr.E.D.Ark. 1984) found a creditor in contempt for a willful violation of the automatic stay where it proceeded to take a default judgment against the debtor's employer after it had notice that the debtor had filed bankruptcy and the employer had not timely answered garnishment interrogatories. In that case the writ of garnishment itself was also filed after the bankruptcy petition, but as the creditor did not have notice of the filing, the violation of the automatic stay engendered by the issuance of the writ was not considered willful, so no contempt was found for the filing of the writ of garnishment itself, only the taking of the default judgment after notice had been given. The court stated:

> It makes no difference whether the garnishment was filed prior to or subsequent to the filing of the . . . petition. At whatever stage the garnishment is, the creditor's attorney must do everything he can to halt the

proceeding. Some courts have even held it a violation of the stay unless the creditor takes affirmative action to dismiss the garnishment upon learning of the bankruptcy. While this Court does not believe it necessary for a creditor to dismiss the garnishment, any affirmative step towards proceeding with the garnishment, such as here taking the default judgment, is clearly a wilful and deliberate violation of the automatic stay.[5]

*In re Mims*, 209 B.R. 746 (Bankr.M.D.Fla. 1997) went even further than *O'Connor*, holding that after a bankruptcy is filed, a creditor has a duty to take affirmative action to stop a garnishment. In *Mims*, the garnishee was a bank that froze the debtor's funds after being served with a writ of garnishment, and despite notice of the bankruptcy and a request by the debtor to dismiss the garnishment action, the creditor refused to take any action. The court found a willful violation of the automatic stay, ordered that the creditor dismiss the garnishment proceeding, and imposed monetary sanctions against the creditor.

Finally, the trustee cites *In re Feldman*, 303 B.R. 137 (Bankr.D.D.Mich. 2003), which goes even further than most of the other cases by holding that even pursuing only the debtor's employer/garnishee after the filing of the bankruptcy petition violates the automatic stay:

> The relevant question under § 362(a) is whether that act is an act to collect on the *debtor's* liability. Surely the answer to that question is yes, that act is an act to collect on the debtor's prepetition debt. . . . First, there would be no garnishment judgement against the employer absent the underlying debt. Second, the employer's payment of the garnishment judgment has the effect of transferring the claim from the original creditor to the employer, in other words, upon payment by the employer, the debtor would then owe the

---

[5] *O'Connor,* 42 B.R. at 392.

8

employer on the claim. . . . Third, and perhaps most important, the employer's payment on the garnishment judgment requires the creditor to file a satisfaction of the judgment against the debtor.[6]

### III. Conclusion

This court need not determine whether it would go as far as the *Mims* and *Feldman* courts. In the instant case, no independent liability by PBLS was established before the debtor's bankruptcy petition was filed. Mitchell made no request to lift the automatic stay so that it could pursue a default judgment in the garnishment proceeding; its actions in obtaining the judgment *pro confesso* are actions against property of the estate. Since the commencement of this case, Mitchell has pushed to collect its judgment ahead of other creditors. And although the court understands Mitchell's impatience and frustration in trying to collect on a judgment that it has spent a great deal of time, expense and energy to obtain, the Bankruptcy Code imposes the automatic stay for exactly this reason. All creditors of the debtor must be treated equally according to their priority. Trying to circumvent the bankruptcy process by proceeding in state court without seeking to lift the automatic stay in this court will not be permitted. Mitchell and its attorney Laurent are in willful violation of the automatic stay and must cancel the judgment *pro confesso*, and pay the Trustee his expenses of responding to the state court issued subpoena, including attorney's fees. The Trustee shall within 14 days present the itemization of these expenses. If the expenses are not paid in full within 14 days of their presentation, or the

---

[6] *Feldman*, 303 B.R. at 139-40.

parties cannot agree as to the amount, the Trustee shall file a motion to present the issue to the court for resolution. The judgment *pro confesso* and the inscription of it must be cancelled within 14 days of this date.

    New Orleans, Louisiana, October 5, 2010.

                                          Jerry A. Brown
                                          U.S. Bankruptcy Judge